1
2
3
4
5
6

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

7
8
9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23

JAMIA FERNANDES, Individually and on Behalf of All Others Similarly Situated,

                    Plaintiff,

          v.

CENTESSA PHARMACEUTICALS PLC, SAURABH SAHA, GREGORY WEINHOFF, MARELLA THORELL, FRANCESCO DE RUBERTIS, ARJUN GOYAL, AARON KANTOFF, BRETT ZBAR, MARY LYNNE HEDLEY, SAMARTH KULKARNI, CAROL STUCKLEY, and ROBERT CALIFF,

                    Defendants.

Case No.

CLASS ACTION

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL

24
25
26
27
28

    Plaintiff Jamia Fernandes ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal

1

knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Centessa Pharmaceuticals plc ("Centessa" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Centessa American Depositary Shares ("ADSs") pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about May 28, 2021 (the "IPO" or "Offering"); and/or (b) Centessa securities between May 28, 2021 and June 1, 2022, both dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Centessa is a clinical-stage pharmaceutical company that purports to discover, develop, and deliver medicines to patients.  The Company's development pipeline includes, among other products, lixivaptan, a vasopressin V2 receptor small molecule inhibitor in Phase 3 clinical development for the treatment of autosomal dominant polycystic kidney disease ("ADPKD"); and ZF874, a small molecule pharmacological chaperone folding corrector of the Z variant of the DNA encoding protein alpha-1-antitrypsin ("A1AT"), which is in Phase 1 clinical development for the treatment of A1AT deficiency ("AATD").

3.      On April 21, 2021, Centessa filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on May 27, 2021 (the "Registration Statement").

4.      On or about May 28, 2021, Centessa conducted the IPO, issuing 16.5 million of its ADSs to the public at the Offering price of $20 per ADS, for proceeds of $306.9 million to the Company after expenses and applicable underwriting discounts.

5.      On June 1, 2021, Centessa filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, collectively with the Registration Statement, the "Offering Documents").

6.      The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary

to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) lixivaptan was less safe than Defendants had represented; (ii) Defendants overstated lixivaptan's clinical and commercial prospects; (iii) ZF874 was less safe than Defendants had represented; (iv) Defendants overstated ZF874's clinical and commercial prospects while downplaying the drug's safety issues; and (v) as a result, the Offering Documents and the Company's public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

7.    On November 1, 2021, Centessa issued a press release announcing results from the Phase 1 study evaluating ZF874 in treating AATD, including, among other results, potential safety issues related to increases in liver enzymes alanine aminotransferase ("ALT") and aspartate aminotransferase ("AST") in one of the study subjects.

8.    On this news, Centessa's ADS price fell $3.19 per share, or 18.55%, to close at $14.01 per share on November 1, 2021.

9.    On June 2, 2022, Centessa issued a press release "announc[ing] that it has made the strategic decision to discontinue development of lixivaptan for

4

[ADPKD,]" citing "a recent observation of [ALT] and [AST] elevations in one subject" from a Phase 3 study of lixivaptan that was designed to assess liver and non-liver safety in certain subjects.

10.    On this news, Centessa's ADS price fell $1.25 per share, or 27.78%, to close at $3.25 per share on June 2, 2022.

11.    Then, on August 10, 2022, Centessa issued a press release "announc[ing] its decision to discontinue development of ZF874 following a recent report of an adverse event (AE) involving elevated liver enzymes (AST/ALT) in a . . . subject dosed with 5 mg/kg BID of ZF874 in the Phase 1 study."  Centessa stated that "[b]ased on the results observed to date, the Company concluded that ZF874 was unlikely to achieve the desired target product profile."

12.    On this news, Centessa's ADS price fell $0.26 per share, or 5.19%, to close at $4.75 per share on August 10, 2022, representing a total decline of **76.25%** from the $20.00 per ADS Offering price.

13.    As of the time this Complaint was filed, Centessa's ADS price continues to trade significantly below the $20.00 per ADS Offering price, damaging investors.

14.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURISDICTION AND VENUE**

15.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

16.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

17.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Pursuant to the Company's most recent quarterly report filed with the SEC, as of August 1, 2022, there were 94,339,299 of the Company's ordinary shares outstanding.  Centessa's ADSs, each representing one of the Company's ordinary shares, trade in the U.S. on the Nasdaq Stock Market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in Centessa's ADSs located within the U.S., some of whom undoubtedly reside in this Judicial District.

18.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PARTIES**

19.     Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired Centessa ADSs pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Centessa ADSs during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

20.     Defendant Centessa is organized under the laws of England and Wales with principal executive offices located at 3rd Floor, 1 Ashley Road, Altrincham, Cheshire WA14 2DT, United Kingdom.  The Company's ADSs trade in an efficient market on the NASDAQ under the trading symbol "CNTA".

21.     Defendant Saurabh Saha ("Saha") has served as Centessa's Chief Executive Officer and a Director of the Company at all relevant times.  Defendant Saha signed or authorized the signing of the Registration Statement filed with the SEC.

22.     Defendant Gregory Weinhoff ("Weinhoff") has served as Centessa's Chief Financial Officer at all relevant times.   Defendant Weinhoff signed or authorized the signing of the Registration Statement filed with the SEC.

23.     Defendants Saha and Weinhoff are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

24.    The Exchange Act Individual Defendants possessed the power and authority to control the contents of Centessa's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Centessa's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Centessa, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

25.    Centessa and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

26.    Defendant Marella Thorell ("Thorell") served as Centessa's Chief Accounting Officer at all relevant times until July 31, 2022.  Defendant Thorell signed or authorized the signing of the Registration Statement filed with the SEC.

27.    Defendant Francesco De Rubertis ("De Rubertis") has served as a Director of Centessa at all relevant times and serves as Chairman of the Company's Board of Directors.  Defendant De Rubertis signed or authorized the signing of the Registration Statement filed with the SEC.

28.    Defendant Arjun Goyal ("Goyal") has served as a Director of Centessa at all relevant times.  Defendant Goyal signed or authorized the signing of the Registration Statement filed with the SEC.

29.    Defendant Aaron Kantoff ("Kantoff") served as a Director of Centessa at all relevant times until July 1, 2022.  Defendant Kantoff signed or authorized the signing of the Registration Statement filed with the SEC.

30.    Defendant Brett Zbar ("Zbar") has served as a Director of Centessa at all relevant times.   Defendant Zbar signed or authorized the signing of the Registration Statement filed with the SEC.

31.    Defendant Mary Lynne Hedley ("Hedley") has served as a Director of Centessa at all relevant times.  Defendant Hedley signed or authorized the signing of the Registration Statement filed with the SEC.

32.    Defendant Samarth Kulkarni ("Kulkarni") has served as a Director of Centessa at all relevant times.  Defendant Kulkarni signed or authorized the signing of the Registration Statement filed with the SEC.

33.    Defendant Carol Stuckley ("Stuckley") has served as a Director of Centessa at all relevant times.  Defendant Stuckley signed or authorized the signing of the Registration Statement filed with the SEC.

34.    Defendant Robert Califf ("Califf") served as a Director of Centessa at all relevant times until February 16, 2022, when he resigned because of his confirmation as the incoming Commissioner of the U.S. Food and Drug

Administration ("FDA").  Defendant Califf signed or authorized the signing of the Registration Statement filed with the SEC.

35.    The Exchange Act Individual Defendants and defendants Thorell, De Rubertis, Goyal, Kantoff, Zbar, Hedley, Kulkarni, Stuckley, and Califf are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

36.    As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Centessa ADSs in the IPO for their own benefit and the benefit of the Company.  The Securities Act Individual Defendants were key members of the IPO working group and executives of the Company who pitched investors to purchase the shares sold in the IPO.

37.    Centessa and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants."

38.    The Exchange Act Defendants and the Securities Act Defendants are sometimes collectively, in whole or in part, referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

39.    Centessa is a clinical-stage pharmaceutical company that purports to discover, develop, and deliver medicines to patients.  The Company's development pipeline includes, among other products, lixivaptan, a vasopressin V2 receptor

10

small molecule inhibitor in Phase 3 clinical development for the treatment of ADPKD; and ZF874, a small molecule pharmacological chaperone folding corrector of the Z variant of the DNA encoding protein A1AT, which is in Phase 1 clinical development for the treatment of AATD.

40.     On April 21, 2021, Centessa filed the Registration Statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on May 27, 2021.

41.     On or about May 28, 2021, Centessa conducted the IPO, issuing 16.5 million of its ADSs to the public at the Offering price of $20.00 per ADS, for proceeds of $306.9 million to the Company after expenses and applicable underwriting discounts.

42.     On June 1, 2021, Centessa filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

**Materially False and Misleading Statements Issued in the Offering Documents**

43.     With respect to lixivaptan's purported safety and tolerability in treating patients with ADPKD, the Offering Documents stated, *inter alia*, that "[w]e believe lixivaptan has the potential to deliver similar efficacy benefits to tolvaptan, which is currently indicated for a subset of ADPKD patients, with a differentiated safety and tolerability profile that may enable access and therapeutic benefit to a broader set of patients"; and that "[w]e believe the potential of lixivaptan in ADPKD is

11

supported by data to date, which includes extensive data from a quantitative-systems toxicology modeling tool, clinical development in a different indication as well as preclinical and clinical studies in ADPKD."

44.     With respect to the prior data that purportedly supported lixivaptan's safety and tolerability in treating patients with ADPKD, the Offering Documents stated, *inter alia*:

> Lixivaptan's development program for ADPKD builds on a historical, extensive development program conducted by our licensors in investigating lixivaptan for the treatment of hyponatremia. This work included 36 completed clinical studies in which more than 1,600 subjects were dosed with lixivaptan . . . . [N]o lixivaptan-related liver toxicity was noted in a safety assessment conducted for potential hepatotoxicity in this previous development program.

> Prior to administering lixivaptan to ADPKD patients, Palladio studied lixivaptan's liver safety profile, as compared to tolvaptan, by utilizing DILIsym, a state-of-the art, predictive, quantitative systems toxicology modeling tool developed by the DILIsym Consortium in collaboration with the U.S. FDA and industry partners. DILIsym representations predicted that lixivaptan is not likely to cause DILI [drug-induced liver injury] and may be better tolerated than tolvaptan with respect to the mechanisms of liver toxicity currently represented in DILIsym. The results of this work were published in a peer-reviewed journal.

> Palladio has completed a Phase 2 clinical trial, designated the ELiSA Study (Evaluation of Lixivaptan in Subjects with ADPKD) . . . . Lixivaptan was well tolerated at the doses given, with adverse events (AEs) consistent with previous studies in non-ADPKD patients. No liver toxicity signals were noted.

> Palladio has also completed a clinical study in a single subject with intractable pain due to ADPKD who was required to discontinue tolvaptan treatment due to clinically significant abnormalities in serum [ALT], a sign of liver toxicity, on each of three sequential attempts to initiate treatment with tolvaptan. The patient was subsequently treated

12

with lixivaptan for more than 14 months with no abnormalities in ALT or other liver chemistry tests.

45.     With respect to a double-blind, randomized, placebo-controlled Phase 1 study of ZF874, the Offering Documents stated, *inter alia*, that "[s]even cohorts of healthy volunteers [were] successfully dosed up to 50mg/kg fasted" with "[a]ll doses well-tolerated, except for a transient apparent Cmax effect at 50mg/kg in the fasted state"; and that "50mg/kg was well-tolerated when given as 25mg/kg bid (12 hour interval)."

46.     The Offering Documents also stated that, "[t]o date, we believe that our preclinical data suggests that . . . ZF874 is generally well-tolerated at high acute doses in several animal species" and "ZF874 has a clean toxicology profile in 28-day GLP [good laboratory practice] studies in rat and dog."

47.     The statements referenced in ¶¶ 43-46 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) lixivaptan was less safe than Defendants had represented; (ii) Defendants overstated lixivaptan's clinical and commercial prospects; (iii) ZF874 was less safe than Defendants had represented; (iv) Defendants overstated ZF874's

13

clinical and commercial prospects while downplaying the drug's safety issues; and (v) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

## Materially False and Misleading Statements Issued During the Class Period

48.    The Class Period begins on May 28, 2021, when Centessa's ADSs began publicly trading on the NASDAQ pursuant to the materially false and misleading statements and omissions contained in the Offering Documents.

49.    On August 16, 2021, Centessa filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2021 (the "2Q21 10-Q").  With respect to lixivaptan, the 2Q21 10-Q stated, in relevant part:

> [O]ur belief in the therapeutic potential of lixivaptan is based, in part, on experiences of Cardiokine in its development of this molecule for a hyponatremia indication, which included over 30 clinical trials. Cardiokine had previously submitted an NDA for lixivaptan for the hyponatremia indication, for which the FDA subsequently issued a complete response letter that cited certain product quality and safety issues and resulted in the agency's determination not to approve lixivaptan for hyponatremia . . . . [T]he meeting minutes issued by the FDA stated that the FDA did not believe the mortality findings from the legacy Cardiokine BALANCE trial — treatment of hyponatremia in hospitalized patients with congestive heart failure —would pose a barrier to approval of lixivaptan for the treatment of ADPKD[.]

50.    The 2Q21 10-Q also stated, in relevant part, that ZF874 "is a novel compound that is intended to act as a pharmacological chaperone for [AATD's] faulty protein, allowing it to fold correctly, potentially relieving the liver burden of

polymer accumulation and providing Z-A1AT in the circulation to protect the lungs."

51.    Appended as exhibits to the 2Q21 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "[t]he [2Q21 10-Q] fully complies with the requirements of section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2Q21 10-Q] fairly presents, in all material respects, the financial condition and result of operations of the Company."

52.    The statements referenced in ¶¶ 49-51 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) lixivaptan was less safe than Defendants had represented; (ii) Defendants overstated lixivaptan's clinical and commercial prospects; (iii) ZF874 was less safe than Defendants had represented; (iv) Defendants overstated ZF874's clinical and commercial prospects while downplaying the drug's safety issues; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## The Truth Begins to Emerge

53.    On November 1, 2021, Centessa issued a press release during pre-market hours announcing results from Part B of the Phase 1 study evaluating ZF874, reporting, among other results, potential safety issues related to elevated liver enzymes (the "November 2021 Press Release").  Specifically, that press release stated, in relevant part:

> Pharmacokinetic analysis showed a two-fold higher exposure to ZF874 in one subject. This subject showed a two-fold higher increase in functional A1AT as well as a delayed, reversible increase in ALT (8x ULN) and AST (3.5x ULN) . . . . Due to ongoing enrollment challenges at the single clinical site, and following the observation of elevated liver enzymes in one Study participant, the Company elected to unblind the Study prior to completing Part B enrollment.

54.    On this news, Centessa's ADS price fell $3.19 per share, or 18.55%, to close at $14.01 per share on November 1, 2021.  Despite this decline in the Company's ADS price, Centessa securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding lixivaptan's and ZF874's safety, as well as their clinical and commercial prospects.

55.    For example, the November 2021 Press Release downplayed issues with ZF874's safety, while simultaneously touting ZF874's clinical and commercial prospects, stating, in relevant part:

> All other liver function tests including bilirubin, GGT [gamma-glutamyl transferase], and ALP [alkaline phosphatase] remained in the

normal range. All other adverse events reported in the Study were classified as mild.

* * *

"With only two subjects of data, we have established proof of mechanism for ZF874 and show, for the first time, the promise of a catalytic small molecule corrector to restore A1AT to clinically significant levels," said [Defendant] Saha, M.D., Ph.D., Chief Executive Officer of Centessa. "This now becomes a drug development exercise as we refine a dose and regimen for our planned global six-month Phase 2 study."

"These are exciting new findings. I look forward to hearing about further development of this novel approach, which has potential to treat both the lung and the liver in this complex disease," said Jeffrey Teckman, M.D., Patricia and James Monteleone Endowed Chair, Director, Pediatric Gastroenterology and Hepatology, Professor of Pediatrics and Biochemistry, Saint Louis University School of Medicine.

56.     On November 15, 2021, Centessa issued a press release announcing the Company's third quarter 2021 financial results and business updates.  With respect to ZF874's continued clinical development, that press release stated, in relevant part, that "[b]ecause one subject showed a delayed, reversible increase in ALT and AST, the Company will be exploring lower doses and different dosing regimens"; that "[t]he Company is taking steps to increase enrollment by adding sites in the United Kingdom and intends to expand the study to the European Union"; and that "[t]he Company anticipates starting a global Phase 2 study in 2Q 2022, with 6-month dosing to commence in 2H 2022 once a dose and regimen are

established and chronic animal toxicology is completed"; thereby downplaying the significance of the elevated liver enzymes observed.

57.     Also on November 15, 2021, Centessa filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2021 (the "3Q21 10-Q").  That filing contained the same statements as referenced in ¶¶ 49-50, *supra*, regarding lixivaptan's and ZF874's therapeutic potential.

58.     In addition, the 3Q21 10-Q discussed ZF874's safety and tolerability results from the drug's Phase 1 Part B study, while downplaying the significance of the elevated liver enzymes observed, stating, in relevant part:

> Due to ongoing enrollment challenges at the Study's single clinical site, and following the observation of elevated ALT and AST in one Study participant, we elected to unblind the Study prior to completing Part B enrollment[.]

> * * *

> Pharmacokinetic analysis showed a two-fold higher exposure to ZF874 in one subject. This subject showed a two-fold higher increase in functional A1AT as well as a delayed, reversible increase in ALT (8x ULN) and AST (3.5x ULN). All other liver function tests including bilirubin, GGT, and ALP remained in the normal range. All other adverse events reported in the Study were classified as mild.

> Because of the ALT and AST elevations in one subject, we will be exploring lower doses and different dosing regimens. We are taking steps to increase enrollment in the Study by adding sites in the United Kingdom and intend to expand the Study to the European Union . . . . We anticipate starting a global Phase 2 study in the second quarter of 2022, the first portion of which (the run-in phase) will be used to further refine dose and regimen ahead of the planned start of the paired liver

18

biopsy portion of the study. That portion of the study will require 6-month dosing and is projected to begin in the second half of 2022, once the Phase 2 dose and regimen are established and chronic animal toxicology is completed.

59.    Appended as exhibits to the 3Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 51, *supra*, signed by the Exchange Act Individual Defendants.

60.    On December 14, 2021, Centessa issued a press release announcing, among other things, its initiation of a global Phase 3 study of lixivaptan to treat ADPKD, dubbed the "ACTION Study," and initial positive safety data from the Company's ongoing Phase 3 study of lixivaptan to assess liver and non-liver safety in certain subjects, dubbed the "ALERT Study" (the "December 2021 Press Release"). With respect to the ALERT Study, that press release stated, in relevant part: "No subjects have had clinically meaningful ALT elevations attributed to lixivaptan and no subjects met the pre-specified stopping criteria of an ALT level >3x ULN."

61.    In addition, the December 2021 Press Release quoted the ACTION Study's principal investigator, who stated, in relevant part: "I have been encouraged by the pharmacodynamic and tolerability data generated to date with lixivaptan and look forward to seeing the benefit and safety data from the upcoming pivotal ACTION Study[.]"

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

62.    The December 2021 Press Release also quoted Defendant Saha, who stated, in relevant part: "[T]he initial safety data from the ALERT Study in subjects who have stopped JYNARQUE due to liver toxicity continues to support the differentiated safety and tolerability profile of lixivaptan."

63.    Moreover, the December 2021 Press Release quoted the chief medical officer of Centessa's subsidiary developing lixivaptan, who stated:

> The initial safety data we shared today from the ALERT Study is similar to the case study we previously reported from the Mayo Clinic and provides additional evidence of lixivaptan's tolerability profile, especially in a group of ADPKD subjects who had previous liver chemistry abnormalities while taking tolvaptan . . . . We look forward to bringing this potential new treatment option to ADPKD patients.

64.    On March 30, 2022, Centessa filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2021 (the "2021 10-K"). The 2021 10-K contained substantively the same statements as referenced in ¶ 44, *supra*, regarding prior data that purportedly supported lixivaptan's safety and tolerability in treating patients with ADPKD, while further stating, in relevant part, that lixivaptan has the "potential to avoid safety issues associated with the only drug approved for the treatment of ADPKD, tolvaptan, which is associated with serious drug induced liver injury (DILI) and in the US is only available under a Risk Evaluation and Mitigation Strategy (REMS) distribution program"; and that "[w]e believe that lixivaptan may

offer similar therapeutic activity in treating ADPKD as compared to tolvaptan while avoiding the DILI associated with tolvaptan use in this patient population."

65.    The 2021 10-K also contained substantively the same statements as referenced in ¶¶ 45 and 58, *supra*, regarding ZF874's previously observed safety and tolerability results, while downplaying the significance of the elevated liver enzymes observed.

66.    Appended as exhibits to the 2021 10-K were substantively the same SOX certifications as referenced in ¶ 51, *supra*, signed by the Exchange Act Individual Defendants.

67.    On May 16, 2022, Centessa filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2022 (the "1Q22 10-Q").    That filing contained the same statements as referenced in ¶ 49, *supra*, regarding lixivaptan's therapeutic potential.

68.    Appended as exhibits to the 1Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 51, *supra*, signed by the Exchange Act Individual Defendants.

69.    The statements referenced in ¶¶ 55-68 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.    Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) lixivaptan

21

was less safe than Defendants had represented; (ii) Defendants overstated

lixivaptan's clinical and commercial prospects; (iii) ZF874 was less safe than

Defendants had represented; (iv) Defendants overstated ZF874's clinical and

commercial prospects while downplaying the drug's safety issues; and (v) as a

result, the Company's public statements were materially false and misleading at all

relevant times.

### The Truth Fully Emerges

70.    On June 2, 2022, Centessa issued a press release during pre-market

hours announcing the Company's decision to discontinue development of lixivaptan

for ADPKD, stating, in relevant part:

> Centessa . . . has made the strategic decision to discontinue
> development of lixivaptan for [ADPKD] including both the Phase 3
> ACTION Study and the open-label ALERT Study. The decision is
> based on a thorough reassessment of the commercial potential of
> lixivaptan as a potential best-in-class therapy for patients with ADPKD,
> and the incremental development challenges and associated costs,
> following a recent observation of [ALT] and [AST] elevations in one
> subject in the ALERT Study.
>
> "The ALERT Study was designed to help provide an early assessment
> of the safety profile of lixivaptan in ADPKD patients who previously
> experienced liver chemistry abnormalities while treated with tolvaptan,
> the only FDA approved therapy for ADPKD. In assessing the recent
> data from a subject in the ALERT Study, we believe that lixivaptan is
> unlikely to achieve the differentiated safety and tolerability profile
> Centessa required for further development of the program. Given the
> revised commercial potential of lixivaptan and our commitment to
> being financially disciplined, we made the data-driven decision to
> voluntarily discontinue development of lixivaptan," said [defendant]
> Saha[.]

71.    On this news, Centessa's ADS price fell $1.25 per share, or 27.78%, to close at $3.25 per share on June 2, 2022.

72.    Then, on August 10, 2022, Centessa issued a press release during pre-market hours announcing, among other things, the Company's decision to discontinue development of ZF874 for the treatment of AATD, stating, in relevant part:

> The Company today announced its decision to discontinue development of ZF874 following a recent report of an adverse event (AE) involving elevated liver enzymes (AST/ALT) in a . . . subject dosed with 5 mg/kg BID of ZF874 in the Phase 1 study. ZF874, a pharmacological chaperone designed to rescue the folding of the Z variant of [A1AT], was in a Phase 1 study for the treatment of AATD. As previously reported in November 2021, elevated liver enzymes were observed in a subject dosed with 15 mg/kg BID of ZF874 in the first cohort of patients within Part B of the Phase 1 study. Based on the results observed to date, the Company concluded that ZF874 was unlikely to achieve the desired target product profile.

73.    On this news, Centessa's ADS price fell $0.26 per share, or 5.19%, to close at $4.75 per share on August 10, 2022, representing a total decline of ***76.25%*** from the $20.00 per ADS Offering price.

74.    As of the time this Complaint was filed, Centessa's ADS price continues to trade significantly below the $20.00 per ADS Offering price, damaging investors.

75.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

76.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Centessa ADSs pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Centessa securities during the Class Period, and were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

77.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Centessa securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Centessa or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

78.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

79.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

80.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Centessa;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Centessa to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Centessa securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

81.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

82.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Centessa securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Centessa securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

83.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

84.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

85.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

86.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

87.    During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Centessa securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Centessa securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

88.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Centessa securities.  Such reports, filings, releases and statements were

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Centessa's finances and business prospects.

89.    By virtue of their positions at Centessa, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.   Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.   In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

90.    Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.   As the senior managers and/or directors of Centessa, the Exchange Act Individual Defendants had knowledge of the details of Centessa's internal affairs.

91.    The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control

and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Centessa. As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Centessa's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Centessa securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Centessa's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Centessa securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

92. During the Class Period, Centessa securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Centessa securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they

30

would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Centessa securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Centessa securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

93.    By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

94.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## <u>COUNT II</u>

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

95.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

31

96. During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Centessa, and conducted and participated, directly and indirectly, in the conduct of Centessa's business affairs. Because of their senior positions, they knew the adverse non-public information about Centessa's misstatement of income and expenses and false financial statements.

97. As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Centessa's financial condition and results of operations, and to correct promptly any public statements issued by Centessa which had become materially false or misleading.

98. Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Centessa disseminated in the marketplace during the Class Period concerning Centessa's results of operations. Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Centessa to engage in the wrongful acts complained of herein. The Exchange Act Individual Defendants, therefore, were "controlling persons" of Centessa within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Centessa securities.

32

99.    Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Centessa.  By reason of their senior management positions and/or being directors of Centessa, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Centessa to engage in the unlawful acts and conduct complained of herein.  Each of the Exchange Act Individual Defendants exercised control over the general operations of Centessa and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

100.  By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Centessa.

## COUNT III

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

101.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

102.   This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

103.   The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

104.   Centessa is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

105.   As issuer of the shares, Centessa is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

106.   None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

107.   By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

108.   Plaintiff acquired Centessa shares pursuant and/or traceable to the Offering Documents for the IPO.

109.   Plaintiff and the Class have sustained damages.  The value of Centessa ADSs has declined substantially subsequent to and because of Defendants' violations.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

110.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

111.    This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

112.    The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Centessa within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Centessa to engage in the acts described herein.

113.    The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

114.    By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  September 28, 2022                 Respectfully submitted,

                                                        POMERANTZ LLP

                                                        */s/ Jennifer Pafiti*
                                                        Jennifer Pafiti (SBN 282790)
                                                        1100 Glendon Avenue, 15th Floor
                                                        Los Angeles, California 90024
                                                        Telephone: (310) 405-7190
                                                        jpafiti@pomlaw.com

                                                        *Attorney for Plaintiff*